**The following constitutes the**
**Memorandum Decision of the Court.**
**Signed September 09, 2008**

_____

Roger L. Efremsky
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 04-56545-RLE |
| VEC FARMS, LLC | |
|           Debtor. | Chapter 11 |
| _____/ | |
| JOHN VAN CUREN,<br>Trustee of the Estate of<br>VEC Farms, LLC | Adversary No. 06-5095 |
|           Plaintiff, | |
| vs. | |
| RICHARD ESCAMILLA, et al., | |
|           Defendants. | |
| _____/ | |

### MEMORANDUM DECISION ON MOTION TO VACATE JUDGMENT

    Before the Court for decision is the Motion to Vacate

Penalty Judgment (Fed. R. Civ. P. 59(e) and 60(b)(6)) (the

"Motion to Vacate") filed by John Colendich; Martin Vukasovich; Virginia Vukasovich; Martin Colendich; Echo Crop Investment, Inc.; Colendich & Vukasovich Vegetable Farms, Inc.; Watsonville Pre-Cool, LLC; 4Q Farms, LLC; Virginia Vukasovich as Trustee of the John M. Vukasovich and Virginia Vukasovich Revocable Living Trust dated June 5, 1992; and Martin Colendich as Trustee of the Martin G. Colendich and Lucille A. Colendich Revocable Living Trust dated October 26, 1995 (collectively, the "Family Defendants"). [AP Docket no. 108.] [1]

Following oral argument and supplemental briefing by the parties, for the reasons stated herein, the Court denies the relief requested by the Family Defendants.

## I. **JURISDICTION**

The Court has subject matter jurisdiction over this matter pursuant to 28 USC § 1334 and § 157(b). This matter is a core proceeding pursuant to § 157(b).

## II. **STATEMENT OF FACTS**

### A. Background Regarding the Debtor

On October 21, 2004, VEC Farms, LLC (the "Debtor") filed this chapter 11 case. On November 19, 2004, the Court appointed John Van Curen as the trustee of this chapter 11 estate and he remains in place as the duly qualified and acting trustee (the "Trustee").

---

[1]/Docket entries in Adversary Proceeding 06-6095 shall be referred to as "AP Docket no. ___" and docket entries in ch. 11 case no. 04-56545 shall be referred to as "Docket no. ___."

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 2 of 33

The Debtor, formed in 1999 as a limited liability company, was in the business of commercial farming and related activities conducted on property owned by or leased from the Family Defendants or entities related to them. The Debtor's two members are Domingo Agricultural Services, Inc. ("Domingo") and Echo Crop Investment, Inc. ("Echo"). Domingo is wholly-owned by Richard Escamilla, Sr. who was also the Debtor's managing member. Echo is wholly owned by Family Defendants John Colendich and Martin Vukasovich. The name VEC Farms apparently comes from the names Martin Vukasovich, Richard Escamilla, Sr., and John Colendich. [AP Docket no. 98, p. 2.]

**B. The Trustee's Adversary Proceeding**

In March 2006, the Trustee filed a complaint commencing this adversary proceeding (the "Adversary Proceeding" and the "Complaint"). The named defendants were three parties related to the Debtor - Richard Escamilla, Sr.; his wholly-owned entity Domingo; and another one of his wholly-owned entities, Escamilla & Sons, Inc. (collectively, the "Escamilla Defendants"), and the ten Family Defendants named above. The Complaint alleged that the Family Defendants and the Escamilla Defendants were insiders of the Debtor as defined in Bankruptcy Code § 101(31) (the Family Defendants and Escamilla Defendants, collectively, the "Insiders"). The Complaint stated 16 claims for relief, many of which were premised on alter ego liability. The claims for relief included avoidance of preferential and fraudulent transfers, avoidance of illegal distributions under Cal. Corp. Code § 17254 and related claims for damages. The prayer sought judgment in

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 3 of 33

the aggregate amount of (i) all allowed and allowable administrative, priority and general unsecured claims against the estate; (ii) all avoidable transfers; (iii) all purported lease payments and service contract payments; and (iv) all damages suffered by the estate as result of the breach by one or more of the Insiders of the obligations under a termination agreement between the Insiders and the Trustee.  The prayer also sought (i) unencumbered title to all real property that was the subject of any of the purported leases between the Insiders and the Debtor; and (ii) a judgment disallowing and subordinating the Insiders' claims. [AP Docket no. 1.]  The Complaint alleged that the Insiders' filed, scheduled, assigned and subrogated claims exceeded $4.5 million.  [AP Docket no. 1, ¶63.]

According to the Trustee, the claims filed or scheduled against the estate (excluding the Insiders' claims) exceeded $4 million.  The Trustee has stated that (i) he expected to obtain judgment against each of the Insiders, if he prevailed in the Adversary Proceeding, in excess of $5 million, and (ii) the avoidable preferences alleged against the Insiders in the Adversary Proceeding were in an aggregate amount in excess of $5 million.  [AP Docket no. 113, ¶4-5.]


### C. The Mainas Adversary Proceeding

In September 2004, Mainas Farms, Inc. ("Mainas") sued the Escamilla Defendants and the Family Defendants (other than 4Q, the Vukasovich Trustee and the Colendich Trustee) in the Superior Court for Imperial County, California.  Mainas removed that action to this Court in February 2006 (AP no. 06-5065, the

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 4 of 33

"Mainas Adversary Proceeding").[2]  Mainas sought to recover
damages on theories similar to the Trustee's including alter ego
liability and breaches of fiduciary duty.  Mainas also filed
proofs of claim seeking approximately $1.2 million on the same
theories.  [Mainas AP Docket no. 1; Claim nos. 9 and 34.]

### D.  Progress of Both Adversary Proceedings: Global Settlement

The Insiders answered the Complaint, generally denying its
allegations.  [AP docket no. 7][3]  The Insiders and the Trustee
thereafter engaged in extensive discovery including the
production of documents, interrogatories, and depositions which
generated several contested discovery skirmishes.  They also
filed cross-motions for summary judgment.  [See, *inter alia*, AP
Docket nos. 18-36, 39, 56, 61-63, 68, 72-74 regarding discovery
issues and nos. 43-52, 58-60, 64-66, 69-71, 76-77, 80, 83, 85
regarding summary judgment issues.]

In May 2007, all of the parties to the Adversary Proceeding
and the Mainas Adversary Proceeding participated in formal
judicial mediation with Judge Dennis Montali (U.S. Bankruptcy
Judge, N. D. California, San Francisco).  Following the
mediation, the parties agreed to a global settlement.

On August 1, 2007, the Trustee filed a motion to approve the

---

[2]/ In this Court, the Trustee's Adversary Proceeding and the
Mainas Adversary Proceeding were consolidated for purposes of
discovery.

[3]/ The Insiders have been jointly represented by one law firm
in this Adversary Proceeding and the Mainas Adversary Proceeding.
The Insiders' current counsel substituted in in place of their
prior counsel in January 2007. [AP docket no. 37.]

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 5 of 33

compromise with the Insiders and Mainas pursuant to Fed. R.
Bankr. P. 9019 (the "Rule 9019 Motion"). [Docket no. 385.]

The Rule 9019 Motion described the litigation as follows:

> The gist of the Trustee's complaint against the Insiders is
> to establish alter ego liability for the debts of the Debtor
> and to disallow or subordinate all claims asserted by the
> Insiders against the Debtor's estate[.] . . . [T]he primary
> contention of the Trustee is that each of the Insiders, in
> concert, controlled the operations and finances of the
> Debtor[.] . . . [And while] the Debtor was inadequately
> capitalized from its inception and suffered losses almost
> throughout its existence, the Insiders caused the Debtor to
> continue to incur debt beyond its ability to satisfy while
> paying substantial sums to the Insiders, all for the benefit
> of the Insiders and to the detriment of the Debtor's non-
> insider creditors.

Docket no. 385, p. 4-5.

In support of the settlement, the Trustee stated that he
believed that he had a high likelihood of prevailing as to
certain Insiders in limited amounts and against other Insiders in
larger amounts but that his chances of success against those
Insiders with the greatest ability to respond to a judgment were
less than against others. In light of the potential complexity,
time and expense of litigating, he believed that the benefits to
the estate from settling exceeded the likely recovery if the
litigation were to have been pursued. [Docket no. 385, p. 8-9.]

A proposed Settlement Agreement was attached as an exhibit
to the Declaration of Merle Meyers filed in support of the Rule
9019 Motion. [Docket no. 385.] The settlement described in the
Settlement Agreement provided, *inter alia*, (i) for payment by the
ten Family Defendants of $750,000 to the estate; (ii) for payment
by the three Escamilla Defendants of $900,000 to Mainas pursuant
to the terms of a three-year promissory note secured by a deed of
trust on certain real property owned by the Escamilla Defendants;

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 6 of
33

(iii) the withdrawal by the Insiders of all of the claims filed by the Insiders, scheduled by the Debtor for the Insiders, or assigned to the Insiders (collectively, the "Subject Claims")[4]; (iv) the withdrawal of Mainas' unsecured claims (in the amount of $1.2 million); and (v) mutual general releases.  The Settlement Agreement described the Subject Claims as (i) the claims scheduled for the Insiders or parties related to them in the approximate amount of $800,000; (ii) the claim filed by Richard Lopez Escamilla, Jr. dba ROC Harvesting in the amount of $496,000 ("Claim no. 42"); (iii) the claims assigned to the Insiders in the approximate amount of $180,000; and (iv) the Insiders' subrogated claims of approximately $2.9 million.  In total, more than $5 million in claims were to be disposed of by the terms of the settlement.[5]

The Settlement Agreement defined the "Defendant Parties" as the Escamilla Defendants and the Family Defendants.  Three default provisions in the Settlement Agreement are relevant to this matter.

Paragraph 6 provides that:

> **[E]ach of the Defendant Parties** . . . **agree to provide** to the Trustee, on or before the Effective Date, the formal, **written withdrawals of all Subject Claims** . . . including without limitation such claims as held by Richard Lopez Escamilla (*i.e., claim no. 42*), Jose Escamilla, ROC, Diane Vukasovich or Connie Vukasovich,. . . **and each of the Defendant Parties shall be liable for all costs and damages** incurred by the Trustee, including without limitation

---

[4]/ The Subject Claims ranged in size from less than $50 to almost $3 million. [Docket no. 385, p. 3, Recital G.]

[5]/ The Trustee has indicated that the dividend to be paid on allowed unsecured claims will be approximately 60%.[Docket no. 385, Dec. John Van Curen, ¶8.]

*Memo.Dec.VEC.06-5095-RLE*                     -7-

reasonable attorneys' fees and costs, **arising from a breach of such covenant** and agreement. (Emphasis added.)

Paragraph 7 provides that:

> **In the event that any of the Family Defendants fails to** timely **perform** *any* **of** . . . **the obligations** . . . arising under the terms **of this agreement**, the Trustee shall be entitled, and **the Family Defendants hereby consent**, **to** the **entry of judgment against all of the Family Defendants**, jointly and severally, . . . in the amount of $1,100,000.00. . . . Trustee and Family Defendants shall execute a stipulation for such judgment. (Emphasis added.)

Paragraph 8 resolves the Mainas Adversary Proceeding and provides that:

> In the event that any of the Escamilla Defendants fails to timely perform any of his or its obligations to Mainas under the terms [of the Note and Deed of Trust] . . . Mainas shall be entitled, and the Escamilla Defendants hereby consent, to the entry of judgment against all of the Escamilla Defendants, jointly and severally, . . . in the amount of $1,100,000.00.

The Settlement Agreement also contained standard merger and integration clauses. September 11, 2007 was set as the deadline for the Insiders to perform as specified in the Settlement Agreement.

Pursuant to paragraph 7 of the Settlement Agreement, each of the Family Defendants signed a stipulation for entry of judgment providing that, upon an event of default, judgment could be entered against each of them, jointly and severally, in the amount of $1.1 million, plus costs of suit and reasonable attorneys fees incurred in filing and obtaining entry of judgment, minus any sums paid by the Family Defendants on or after May 22, 2007.

/ / / /

/ / / /

/ / / /

*Memo.Dec.VEC.06-5095-RLE*                    -8-

**E. The ROC Objection and Court Approval of the Proposed Settlement**

The only objection to the proposed settlement was filed by Richard Lopez Escamilla, Jr. regarding Claim no. 42. [Docket no. 389.] The objection stated that Richard Escamilla, Jr. had not participated in the mediation and had not consented to the withdrawal or disposition of Claim no. 42.

In what appears to be a prescient statement, in reference to paragraph 6 of the Settlement Agreement, the objection stated

> While the Settlement Agreement appears to impose the consequences of a failure of Escamilla, Jr. to withdraw his claim on the "Family Defendants" (see ¶7), Escamilla is concerned that this broad language [of ¶6] could nonetheless serve as an adjudication of the validity of his claim.

Docket no. 389, p. 2, fn 3.

Escamilla, Jr. requested that approval of the settlement be conditioned on the insertion of limiting language in any order approving the compromise to address this issue. All parties acceded to this request and on August 30, 2007, the Court entered its Order approving the compromise. [Docket no. 390.]

**F. The Family Defendants' Breach and the Trustee's Motion for Entry of Judgment**

The Family Defendants paid $750,000 to the Trustee by the September 11, 2007 deadline but did not obtain the withdrawal of Claim no. 42 by the deadline. On September 17, 2007, the Trustee filed the stipulation for entry of judgment and then filed his Motion for Entry of Judgment Pursuant to Stipulation (the "Motion for Entry of Judgment"). The Trustee asked for a judgment in the amount of $364,578 pursuant to paragraphs 6 and 7 of the

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 9 of 33

Settlement Agreement.[6] [AP Docket nos. 93 and 95.]

The Family Defendants opposed the Motion for Entry of Judgment, contending that the Trustee had misinterpreted the Settlement Agreement and the Court should consider extrinsic evidence of the parties' intent under general rules of contract interpretation. In support, they cited, *inter alia*, Cal. Civ. Code §§ 1638-1640, § 1647 and <u>Pacific Gas & Electric Co. v. G.W.</u> <u>Thomas Drayage & Rigging Co., Inc.</u>, 69 Cal. 2d 33, 37 (1968) (if language of contract fairly susceptible to either one of two interpretations, extrinsic evidence to prove either of such meanings admissible).

In the Family Defendants' view, paragraph 6 provided for *actual* damages for a default in failing to obtain claim waivers (<u>i.e.</u>, an obligation to reimburse the estate for payment on any of the Subject Claims plus attorneys' fees incurred in dealing with any of the Subject Claims) and paragraph 7 provided for a judgment against the Family Defendants for default in making timely payment of the $750,000 specified in the Settlement Agreement. The Family Defendants also argued that the judgment requested by the Trustee would be an unenforceable penalty prohibited by Cal. Civ. Code § 1671 and § 3275. [AP Docket no. 100.]

At the November 8, 2007 hearing on the Motion for Entry of Judgment, the Court orally ruled that the Settlement Agreement was not ambiguous, was not susceptible to the meaning that the Family Defendants asserted, and declined to consider the

---

[6]/ The Judgment includes $8,225 in costs and $6,352 in attorneys' fees.

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 10 of 33

extrinsic evidence offered by the Family Defendants.  The Court
also ruled that if there had been a mistake in understanding the
operation of paragraphs 6 and 7, it was unilateral, not mutual.
Accordingly, any such mistake gave no basis to alter or amend the
Settlement Agreement.  Cal. Civ. Code § 1640; 1 Witkin, Summary
of California Law, § 257, p. 285 (10th ed. 2005).  The Court
declined to rule on the Cal. Civ. Code § 1671 and § 3275 issue,
deferring any such ruling until after a judgment had been
entered.

On November 9, 2007, the Court entered judgment against the
Family Defendants as requested by the Trustee in the amount of
$364,578.49 (the "Judgment").  [AP Docket no. 103.]

At the November 8, 2007 hearing, counsel for the Family
Defendants stated to the Court that the Family Defendants could
have obtained the withdrawal of Claim no. 42 before the date of
that hearing but had elected to wait until the Court ruled on the
Motion for Entry of Judgment.  [AP Docket no. 115, Ex. H, p. 12-
13.]  The Family Defendants filed a notice of the withdrawal of
Claim no. 42 on November 16, 2007, approximately sixty days after
the deadline.


### G. The Family Defendants' Motion to Vacate the Judgment

#### 1. The Family Defendants' Position

On November 19, 2007, the Family Defendants filed their
Motion to Vacate.  The Family Defendants contend that the
Judgment is an invalid penalty and is not based on a valid
liquidated damages clause in the Settlement Agreement.  They
claim that the test for liquidated damages is whether the damages

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 11 of
33

would have been *impracticable or extremely difficult* to ascertain. They claim that is not the case here in that paragraph 6 of the Settlement Agreement spells out how damages are to be calculated if there is a breach of the performance specified in that paragraph. The Family Defendants argue that the *actual* damages suffered by the Trustee as a result of their delay in obtaining the waiver of Claim no. 42 are minimal and the Judgment based on paragraph 7 is so disproportional in amount as to constitute an unenforceable penalty or a forfeiture. The Family Defendants rely on Cal. Civ. Code § 1671 and <u>Sybron Corp. v. Clark Hosp. Supply Corp</u>., 76 Cal. App. 3d 896, 900 (Cal. Ct. App. 1978). The Family Defendants also argue that because they have now provided the waiver of Claim no. 42, they are entitled to relief from forfeiture under Cal. Civ. Code § 3275.[7]

### 2. The Trustee's Position

The Trustee argues that the Family Defendants are misstating the law on liquidated damages. Under California law in effect since 1978, the test for whether the Judgment is based on a valid liquidated damages provision or an invalid penalty provision is whether the provision was *reasonable in the circumstances as they existed at the time the settlement was negotiated*. Cal. Civ. Code § 1671(b). The Trustee contends that the Judgment is

---

[7]/ Cal. Civ. Code § 3275 provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

*Memo.Dec.VEC.06-5095-RLE*                     -12-

reasonable because it must be evaluated by comparing it to the amount sought in the underlying action. When it is evaluated in this light, the default provisions in the Settlement Agreement are appropriate and the $364,000 Judgment is itself reasonable and proportional in amount. The Trustee relies on language in Eising v. Locke (In re Wescot Intl., Inc.), 236 B.R. 27 (N.D. Cal. 1999) and authority from outside California interpreting provisions similar to California law on liquidated damages. The Trustee also argues that because the Family Defendants willfully delayed obtaining the waiver of Claim no. 42, relief under Cal. Civ. Code § 3275 is not available to them.[8]

### 3. The Court's Request for Additional Briefing

At the January 10, 2008 hearing on the Motion to Vacate, the Court requested additional briefing on three issues. Supplemental briefs have been filed addressing these three issues:

(1) Is Court approval of the settlement under Fed. R. Bankr. P. 9019 an impediment to amending the Judgment?

(2) In light of the 1978 change in Cal. Civ. Code § 1671, is the decision in Sybron Corp. v. Clark Hosp. Supply Corp., 76

---

[8]/ Willful, in this context, means an intentional failure or refusal to perform an act which is required to be done. Wilson v. Sec. First Nat. Bank of Los Angeles, 84 Cal. App. 2d 427, 431 (Cal. Dist. Ct. App. 1948). The Family Defendants' admitted they were able to obtain the claim withdrawal but delayed until after the Judgment had been entered. They obtained the withdrawal within days of the Judgment being entered. Without finding this was "willful" within the meaning described, the Court relies on Cal. Civ. Code § 1671 rather than § 3275 which both offer the same relief - a means to vacate the Judgment.

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 13 of 33

Cal. App. 3d 896, 900 (Cal. Ct. App. 1978) still good law?

(3)  In assessing the reasonableness of the amount of liquidated damages, is the Court to compare the recovery sought in the underlying action to the amount of the Judgment or compare the damages from the breach of the settlement agreement to the amount of the Judgment?

## III. **DISCUSSION**

### A. Approval of the Settlement under Rule 9019

As a preliminary matter, approval of the Settlement Agreement under Fed. R. Bankr. P. 9019 does not prevent the Court from considering the Family Defendants' argument that the Judgment is an invalid penalty.  See Timney v. Lin, 106 Cal. App. 4th 1121, 1129 (Cal. Ct. App. 2003) (interpreting approval of settlement under Cal. Code of Civ. Pro. § 664.6; approval by court does not immunize clause in settlement agreement that is otherwise illegal); Eising v. Locke (In re Wescot Intl., Inc.), 236 B.R. 27 (N.D. Cal. 1999) ("Westcot") (on basis of Fed. R. Civ. P. 60(b)(6), court gives relief from judgment entered after default in performance under settlement agreement approved under Rule 9019).  In light of this authority, only the liquidated damages issue will be discussed.

### B. Fed. R. Bankr. P. Rule 59(e) and Rule 60(b)

Federal Rule of Civil Procedure 59(e), applicable herein by Fed. R. Bankr. P. 9023, provides that a motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment.  The Family Defendants timely filed the Motion to

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 14 of 33

1  Vacate.

2      A motion under Rule 59(e) should not be granted absent

3  highly unusual circumstances. <u>McDowell v. Calderon</u>, 197 F.3d

4  1253, 1255 (9th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1082 (2000).

5  There are four basic grounds upon which such a motion may be

6  granted, only two of which are relevant here: to correct manifest

7  errors of law or fact upon which a judgment is based or to

8  prevent manifest injustice.  <u>In re Arden Properties, Inc.</u>, 248

9  B.R. 164 (Bankr. D. Ariz. 2000).  Granting such a motion is

10  entrusted to the sound judgment of the Court.  <u>In re Qmect, Inc.</u>,

11  2007 WL 4357566, *2 (Bankr. N.D. Cal. 2007).  The Family

12  Defendants contend that granting the Motion to Enter Judgment was

13  an error of law and it must be reversed to prevent an "obvious

14  injustice." [AP Docket no. 108, p. 7.]  The Family Defendants

15  have the burden of proof regarding the basis for the relief

16  sought under Rule 59(e).  <u>In re Worldcom, Inc</u>., 382 B.R. 610

17  (Bankr. S.D.N.Y. 2008).

18      Federal Rule of Civil Procedure 60(b)(6), applicable herein

19  by Fed. R. Bankr. P. 9024, provides that "[o]n motion and upon

20  such terms as are just, the court may relieve a party or a

21  party's legal representative from a final judgment . . . for. . .

22  any . . . reason justifying relief from the operation of the

23  judgment."  Rule 60(b)(6) provides courts with authority to

24  vacate a judgment when it is appropriate to accomplish justice.

25  <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 864

26  (1988).  Rule 60(b)(6) is to be used sparingly as an equitable

27  remedy to prevent manifest injustice only where extraordinary

28  circumstances prevented a party from taking timely action to

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 15 of 33

prevent or correct an erroneous judgment. <u>Wescot</u>, 236 B.R. at 32.

Under Rule 59(e), the Court may reconsider its order allowing the Trustee to enter the Judgment. Under Rule 60(b)(6), if appropriate, the Court may vacate or amend the Judgment.

**C. Relevant Authority**

Both the Trustee and the Family Defendants rely, at least in part, on California law on liquidated damages. Whether California law is binding in the context of ruling on a motion brought under Rule 60(b)(6) has been questioned. In <u>Wescot</u>, one of the parties argued that the bankruptcy court had erred in relying on a California decision (<u>i.e.</u>, the <u>Sybron</u> decision upon which the Family Defendants rely) when it granted relief under Rule 60(b)(6) "because an action under Rule 60 is uniquely a creature of federal law, and therefore the court is not bound by California law." <u>Wescot</u>, 236 B.R. at 33. The District Court acknowledged that this was correct, but noted that there was a dearth of federal authority on point and it was "certainly not improper" for the bankruptcy court to have referred to state law for its decision. <u>Id</u>. Accordingly, while California law is instructive on the precise issue before the Court, it is not binding.

**D. Interpretation of the Settlement Agreement**

The rules regarding the formation and interpretation of contracts govern the analysis of settlement agreements. <u>Timney v. Lin</u>, 106 Cal. App. 4th 1121 (Cal. Ct. App. 2003).

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 16 of 33

Settlement agreements embody compromises in which each side gives up something it might have won in litigation and waives its right to litigate. The court's role is to construe a settlement agreement as written, as it would any other contract. See U.S. v. Armour & Co., 402 U.S. 673, 681 (1971) (discussing interpretation of consent decree). While a settlement agreement is a contract, there may be significant differences in the way any particular settlement agreement operates. See Archer v. Warner, 538 U.S. 314, 323 (2003) (describing settlement agreement and releases as a "kind of novation" which do not bar claim that settlement debt arose out of false pretenses, false representation or actual fraud); In re Worldcom, Inc., 382 B.R. at 623 (discussing determination under state law as to whether settlement agreement is accord and satisfaction, novation, or substituted agreement and differing results flowing from this determination).

Here, there is no question that the parties - represented by sophisticated and experienced counsel - aggressively litigated this Adversary Proceeding, voluntarily chose to attend judicial mediation and then entered into a valid contract defining performance obligations and the consequences of non-performance. The Court approved the settlement as fair and equitable under applicable standards governing approval of compromises in bankruptcy cases. See Martin v. Kane (In re A&C Properties), 784 F.2d 1377 (9th Cir. 1986) (articulating factors for approval of compromise in a bankruptcy case).

The Settlement Agreement obligated the Family Defendants to deliver the waiver of Claim no. 42. They breached the Settlement

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 17 of 33

Agreement by failing to deliver the waiver of Claim no. 42 in the time promised. As a consequence, pursuant to the stipulation, the Judgment has been entered. The only question is whether the Judgment is unenforceable because it amounts to a penalty.

### E. Standard for Validity of Liquidated Damages Clauses

#### 1. Pre-1978 California Law on Liquidated Damages

Prior to 1978, liquidated damages provisions were disfavored under California law. At that time, Cal. Civ. Code § 1670 provided "every contract by which the amount of damage to be paid . . . for a breach of an obligation is determined in anticipation thereof, is to that extent void, except as provided in [section 1671]." Section 1671 then provided that a liquidated damages provision was only valid when, "from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." There was also a judicially created requirement that liquidated damages had to be the result of a "reasonable endeavor" by the parties to estimate fair compensation for the expected loss. Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc., 135 Cal. App. 4th 1023, 1029 (Cal. Ct. App. 2006) ("UCAN") (explaining derivation of reasonable endeavor test and its application in consumer context; concluding that actual negotiation is not required for a finding of a reasonable endeavor to estimate compensation because, on an objective basis, the reasonableness of the amount is the determinative factor).

/ / / /

/ / / /

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 18 of 33

## 2. Current California Law on Liquidated Damages

Effective July 1978, the California legislature adopted a California Law Revision Commission recommendation and repealed Cal. Civ. Code § 1670 and amended § 1671 to provide a new general rule favoring liquidated damages except in certain consumer cases and residential leases.

Enacted as it was proposed by the Law Revision Commission, Cal. Civ. Code § 1671(b) provides:

> [**A] provision** in a contract liquidating the damages for the breach of the contract **is valid unless** the party seeking to invalidate the provision establishes that the provision was **unreasonable under the circumstances existing at the time the contract was made.** (Emphasis added.)

Under the current law, the liquidated damages need only bear a reasonable relationship to the range of harm that the parties might reasonably have anticipated when they entered into the contract. <u>Ridgley v. Topa Thrift & Loan Ass'n.</u>, 17 Cal. 4th 970, 981 (1998) (finding that "*pre-payment charge*" of 6 months interest on entire principal loan balance imposed for *any* "*late payment*" was not a reasonable attempt to anticipate damages because it was not logically related to its purported function - compensation for loss of future interest payments); <u>Weber, Lipshie & Co. v. Christian</u>, 52 Cal. App. 4th 645, 656 (Cal. Ct. App. 1997) (upholding liquidated damage formula in partnership agreement because it had a reasonable relationship to range of harm that might reasonably be anticipated from breach); <u>Radisson Hotels Intern., Inc. v. Majestic Towers, Inc.</u>, 488 F. Supp. 2d 953, 959 (C.D. Cal. 2007) (upholding liquidated damage provision in hotel license agreement based on doubling prior year's royalty

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 19 of 33

fee because it was reasonable estimate when actual damages were difficult to compute).

It is unclear if the judicially created test requiring a "reasonable endeavor" by the parties to estimate just compensation for breach is still relevant to the determination of the validity of a liquidated damages clause outside of the consumer context. This issue will be discussed *infra*.

## F. Application

### 1. The Family Defendants' Authority

The Family Defendants rely primarily on <u>Sybron Corp. v. Clark Hosp. Supply Corp.</u>, 76 Cal. App. 3d 896 (Cal. Ct. App. 1978) ("<u>Sybron</u>"). In <u>Sybron</u>, a seller of hospital beds sued a buyer for breach of contract asking for damages of $143,000. The buyer asserted affirmative defenses and cross-complained for $159,000. The parties agreed to a settlement in which the buyer was to pay $72,000 in 12 monthly installments plus interest with the condition that if there was a default, a stipulated judgment for $100,000 would be entered. The buyer paid $42,000 in installments and then defaulted and the seller had the $100,000 judgment entered. The buyer then moved to set aside the judgment requesting equitable relief from forfeiture under Cal. Civ. Code § 1671 and § 3275. <u>Sybron</u>, 76 Cal. App. 3d at 899.

The <u>Sybron</u> court's analytical approach, using the outdated law, was as follows: First, liquidated damages not reasonably related to actual damages are unenforceable and void as penalties *except* where damages cannot readily be ascertained. Because damages for the withholding of money are easy to determine -

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 20 of
33

i.e., interest at prevailing rates - penal provisions for mere *delay* in the payment of money are not ordinarily enforceable. Id. at 900. Second, the party seeking to enforce such a provision must show that *damages for delay* were impracticable to ascertain at the time of formation of the contract. Id. Third, the substance rather than the parties' characterization of the transaction governs. Id.

Applying this outdated test, the Sybron court concluded that the trial court had erred in finding that damages were difficult to ascertain and had failed to take into account the need for proportion in damages:

> We think the penalty at bench bears no reasonable relationship to actual damages suffered by respondent as the result of delay but to the contrary appears grossly disproportionate in amount. . . [T]he equitable powers of the court exist to insure that the ultimate obligation imposed on the debtor is not unreasonable *in proportion* to the original obligation and the seriousness of the default.

Sybron, 76 Cal. App. 3d at 903 (emphasis in original).[9]

Ultimately, the court reversed and remanded with instructions to the trial court to reduce the judgment to $72,000 plus interest, attorneys fees, and costs.[10] The Family Defendants contend that this approach has been followed consistently despite the 1978 change in the law. See Ridgley v.

---

[9]/ The Sybron court apparently used the phrase "original obligation" to mean the $72,000 settlement amount which was to be paid in installments rather than the larger amount sued for in the underlying action. The phrase "ultimate obligation" was apparently used to mean the amount to be paid upon default - the $100,000 judgment.

[10]/ The decision does not indicate whether a deduction was allowed for the $42,000 in payments that had been made. If it was not, the court's result makes no sense.

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 21 of 33

Topa Thrift & Loan Assn., 17 Cal. 4th 970 (1998); Harbor Island
Holdings v. Kim, 107 Cal. App. 4th 790 (Cal. Ct. App. 2003); Atel
Fin. Corp. v. Quaker Coal Co., 132 F. Supp. 2d 1233, aff'd on
other grounds, 321 F.3d 924 (9th Cir. 2003); Applied
Elastometrics, Inc. v. Z-Man Fishing Prods., Inc., 521 F. Supp.
2d 1031 (N.D. Cal. 2007).

### 2. The Trustee's Authority

The Trustee focuses on Eising v. Locke (In re Wescot Intl.,
Inc.), 236 B.R. 27 (Dist. N.D. Cal. 1999) ("Wescot") and cases
from other jurisdictions. In Wescot, the chapter 7 trustee sued
a principal of the debtor contending he owed $300,000 to the
estate. The parties entered into a settlement through which the
defendant agreed to pay $50,000 pursuant to a promissory note
payable in monthly installments over 24 months. The settlement
also provided that if defendant defaulted, the trustee was
entitled to entry of a judgment for $1 million. When defendant
defaulted, the trustee entered the $1 million judgment.
Defendant then offered to cure the default under the note if the
trustee would set aside the judgment. The trustee refused but
agreed not to enforce it as long as defendant stayed current on
the note payments. When the trustee and defendant gave notice of
their intent to enter into a compromise to resolve the remaining
debt, the trustee sold the judgment to a higher bidder. When
this purchaser sought to enforce the judgment, defendant sued for
injunctive and declaratory relief. The bankruptcy court, relying
on Sybron, held that the $1 million judgment was unreasonable in
proportion to the original obligation (as used here, $300,000)

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 22 of
33

and the seriousness of the default (a brief delay in payments on the $50,000 note), resulting in an unconscionable penalty. The bankruptcy court also found that the trustee was estopped from arguing that he had not agreed to accept payment of the $50,000 note in full satisfaction of the obligation. The district court agreed with this conclusion, noting that there was a "vast difference" between the trustee's $300,000 claim and the $1 million judgment – and that the $1 million judgment was in fact far more disproportionate to the original obligation and the seriousness of the default than that in Sybron. Westcot, 236 B.R. at 33.

The judgment purchaser in Wescot relied on three cases to counter the Sybron decision: Xerox Fin. Servs. Life Ins. Co. v. High Plains Ltd. P'ship, 44 F.3d 1033 (1st Cir. 1995) ("Xerox"); Crosby Forrest Prods., Inc. v. Byers, 623 So. 2d 565 (Fla. Dist. Ct. App. 1993); and Resolution Trust Corp. v. Avon Center Holdings, Inc., 832 P.2d 1073 (Colo. Ct. App. 1992). The Trustee relies on the same three cases all of which the Wescot court discussed and found consistent with Sybron in their outcome:

> [These three] cases agree with Sybron in concluding that the payment upon default should be proportional to the original obligation: each of those courts commented that the judgments were enforceable precisely because they bore a reasonable relation to the losses the parties agreed might be sustained.

Wescot, 236 B.R. at 33.

In light of the dearth of federal authority on point, a brief review of these three cases is appropriate. In Xerox, the First Circuit affirmed the denial of a Rule 60(b)(6) motion attacking the enforcement of judgments in the amount of $6

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 23 of 33

million which had been triggered by debtor's failure to make an
initial payment of $125,000 due under the terms of a negotiated
settlement of several lawsuits.  The judgment debtor argued that
under applicable state law, the judgments were unenforceable
penalties because they were disproportional to the amount of
damages stemming from the mere default in paying $125,000.  The
First Circuit first noted that state law might not be controlling
in this Rule 60(b) context.[11]  However, even if state law did
preclude penalties for breach of contract, the court questioned
whether that rule applied to a final judgment reached in the
context of a negotiated settlement:

> Indeed, even a contract agreeing to settle a pending or
> threatened suit – technically, a contract of 'accord' – may
> be enforceable despite claims that it constitutes a penalty.
> *Williston* says that the penalty defense is not available in
> such cases; and the case law is divided, weighted slightly
> in favor of *Williston*. (Citations omitted)

<u>Xerox</u>, 44 F.3d at 1039.

The First Circuit noted the apparent rationale for the rule
against enforcing penalties in contracts (i.e., parties entering
into a contract may not fully appreciate the impact of a breach
if one does occur, contract damages aim at compensation, courts
do not like results that appear unjust.)  In a contract of accord
entered into *after* a dispute has arisen, these concerns are
obviously reduced and the focus is on the strength of claims, the
damages, the costs of litigating.  When a defendant consents to
judgment, it is done with "eyes wide open" and usually with legal

---

[11]/ As discussed above, <u>Wescot</u> agreed that state law might
not be controlling in a Rule 60(b)(6) context but agreed state
law was pertinent. <u>Wescot</u>, 236 B.R. at 33, fn 3.

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 24 of
33

advice. The First Circuit concluded:

> Courts that share this view may also feel that the
> plaintiff, who in settlement often accepts less than is
> claimed, ought not then be forced to litigate anew about the
> propriety of the discounted amount. After all, the
> settlement may be attractive just because it assures that
> litigation about liability and amounts is over. If this
> view is taken of a contract in accord one would expect the
> same considerations to apply several times over to insulate
> from penalty defenses a court-entered consent judgment,
> which is one step further down the line (and a very
> important step).

Xerox, 44 F.3d at 1039.

Finding no state decisions on whether the penalty defense

applied to contracts of accord, questioning whether state law

even controlled in this context, and noting that ultimately, the

judgment debtor had failed to meet his burden of proving overall

disproportion, the court approved the enforcement of the $6

million judgments:

> In all events, there is no showing that enforcement of the
> judgments involves a penalty. This case does not involve in
> isolation the collection of $6 million for failure to pay a
> $125,000 debt. *Any judgment about disproportion would*
> *depend on the reasonable magnitude of all of the claims*
> *settled . . . and all of the benefits received . . .* [T]he
> settlement covered four lawsuits, three projects, and a
> substantial number of claims and counterclaims. [Plaintiff]
> may well receive less than it was originally entitled to
> even if it collects the $6 million in judgments and keeps or
> collects everything else that it was given or promised under
> the settlement.

Xerox, 44 F.3d at 1040 (emphasis added).

In Crosby Forrest Products, Inc. v. Byers, the court refused

to set aside a stipulated judgment. The court stated that it

believed that the parties' freedom of contract was to be

respected where a higher amount was made payable upon default

when it represented a legitimate amount reflected by the record

and was not a subterfuge for usury or an unconscionable premium.

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 25 of
33

<u>Crosby Forrest Prods., Inc. v. Byers</u>, 623 So. 2d at 565.

In <u>Resolution Trust Corp. v. Avon Center Holdings, Inc.</u>, the court refused to set aside a $5.7 million judgment in favor of a lender which had been entered upon the debtor's default in paying an agreed settlement amount of $2 million. The lender had originally sued for $3.5 million and the court found the $5.7 million bore a reasonable relation to the losses the parties considered and agreed might be sustained. <u>Resolution Trust Corp. v. Avon Center Holdings, Inc.</u>, 832 P.2d at 1073.

### 3. Conclusions Regarding Conflicting Authority

After reviewing the analysis in <u>Sybron</u>, <u>Wescot</u>, and <u>Xerox</u>, the Court concludes that the Family Defendants' reliance on <u>Sybron</u> is misplaced. First, this Court is not bound to follow <u>Sybron</u> in the context of a Rule 60(b)(6) motion. <u>See</u> <u>Xerox</u>, 44 F.3d at 1039 (state law pertinent but not controlling); <u>Wescot</u>, 236 B.R. at 33 (same). Second, the <u>Sybron</u> decision is premised on the out-dated version of Cal. Civ. Code § 1671 and employs a standard that is no longer applicable. The Family Defendants are incorrect in asserting that damages must be "impracticable or extremely difficult" to ascertain and that only the burden of proof has changed. The standard itself changed in 1978. Liquidated damages provisi/ons are *presumed to be valid* and there is no longer a requirement that it be "impracticable or extremely difficult" to fix the actual damages – the liquidated damages provision must only be *reasonable in the circumstances existing at the time* it is agreed to.

Third, <u>Sybron</u> dealt with a default in making installment

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 26 of 33

payments as part of the negotiated settlement of a commercial
breach of contract action and the court clearly focused on the
question of *delay* in making payments in its proportionality
analysis. Because "damages for withholding of money are easily
determinable" the court concluded that the $28,000 difference –
between the $100,000 judgment and the $72,000 agreed installment
amount was not rationally related to the actual damages for
*delay*. <u>Sybron</u>, 76 Cal. App. 3d at 900. <u>Sybron</u> relied on <u>Garrett</u>
<u>v. Coast & Southern Fed. Sav. & Loan Ass'n.</u>, 9 Cal. 3d 731, for
the proposition that charges for delay in making payments must be
reasonably related to actual damages for delay. This basic
proposition was affirmed in <u>Ridgley v. Topa Thrift & Loan Ass'n.</u>,
17 Cal. 4th at 981. Seen in that context, the <u>Sybron</u> decision
makes sense under either version of Civ. Code § 1671. However,
this Adversary Proceeding and its settlement do not involve delay
in making payments. Here, the Trustee sought damages for breach
of fiduciary duties by the Insiders and the recovery of avoidable
transfers by and among the Insiders. The Trustee asserted that
the Insiders' Subject Claims totaled more than $4 million and he
anticipated prevailing at trial and recovering $5 million. The
Trustee agreed to the compromise embodied in the Settlement
Agreement for the certainty of recovering a timely payment of
$750,000 from the Family Defendants and the withdrawal of all of
the Subject Claims. The Court assumes the Family Defendants had
performed an analysis similar to the Trustees in order to agree
to the settlement terms. Unlike <u>Sybron</u>, this settlement
agreement involved more than a series of payments and the Court's
analysis involves more than an assessment of delay in making

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 27 of
33

payments. There is no basis upon which to find a reasonable
proportionality by an obvious application of an interest rate to
a principle amount as there was in <u>Garrett</u>, <u>Sybron</u> and <u>Ridgley</u>.
<u>Sybron</u> is simply not persuasive.[12] The approach taken by the
First Circuit in <u>Xerox</u>, is far more appropriate on these facts as
it took into consideration the scope of the litigation, the
competing claims, and the negotiated settlement terms in reaching
its decision on proportionality and reasonableness.

### 4. The Judgment is Valid

Based on this record, the Court concludes that the Family
Defendants have failed to meet their burden of proving that the
Judgment fails the test of Cal. Civ. Code § 1671(b). First, the
Family Defendants freely entered into the settlement and the
general rule is that when a person with the capacity of reading

---

[12]/ In July 2008, the Family Defendants brought to the
Court's attention <u>Greentree Fin. Group, Inc. v. Execute Sports,
Inc.</u>, 163 Cal. App. 4th 495 (Cal. Ct. App. 2008) dealing with
facts similar to those in <u>Sybron</u>. The prayer of the complaint
asked for $45,000, the parties agreed to settle for $20,000
payable in two installments, and agreed that upon default,
judgment would be entered for the amount in the prayer plus
attorneys' fees and costs. The defendant failed to make the
first installment payment and judgment for $61,000 (principal,
pre-judgment interest, attorneys fees) was entered. Reversing on
appeal, the court focused on the fact that damages for the delay
in paying money are easily determinable and the judgment was
excessive because it was three times the agreed settlement
amount. The record was also devoid of any support for plaintiff's
chances of complete success on the merits and there had been no
admission of wrongdoing. The court viewed the difference between
the $60,000 judgment and the $20,000 settlement amount as a
$40,000 late payment penalty which had no reasonable relationship
to any actual damages for delay. The case is distinguishable on
its facts and does not dictate the result here as it deals only
with damages for the delay in making payments.

Case: 06-05095    Doc# 129    Filed: 09/09/08    Entered: 09/09/08 11:03:35    Page 28 of
33

and understanding a document signs it, he is, in the absence of fraud, bound by its contents, and is estopped from saying that its provisions are contrary to his intention or understanding. Jefferson v. California Dept. of Youth Auth., 28 Cal. 4th 299, 303 (2002) (citation and inner quotations omitted). The Settlement Agreement is clear: Paragraph 6 makes obtaining the claim waivers the Family Defendants' obligation and paragraph 7 makes breach of the paragraph 6 obligations a default under paragraph 7. Default under paragraph 7 resulted in entry of the Judgment.

Second, the liquidated damages here bear a reasonable relationship to the range of harm that might reasonably have been anticipated by the parties to arise from breach of the settlement terms. The $364,000 Judgment *is proportional* in amount to the magnitude of the claims asserted by the Trustee in this Adversary Proceeding. As employed in Wescot, 236 B.R. at 33 and Xerox, 44 F. 3d at 1040, the applicable comparison is between the original obligation (as shown by the detailed allegations in the Complaint, the facts obtained in discovery, and the amounts of the Subject Claims) and the amount of the Judgment. The task is not to compare the *actual* damages arising from the delay in obtaining the withdrawal of Claim no. 42 to the Judgment amount. This is not a situation equivalent to that in Sybron or Ridgley where damages for the delay in paying money are analyzed and their reasonableness is measured by considering the application of interest to principle.

Third, as the California Supreme Court has instructed, the formula for arriving at the amount of the Judgment is logically

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 29 of 33

related to its function.  The formula's function was to lead to an amount that would compensate the Trustee - upon an occurrence of a default - for giving up the potential for a greater recovery on the claims asserted in the Adversary Proceeding.  <u>Ridgley v. Topa Thrift & Loan Ass'n.</u>, 17 Cal. 4th at 981.

Fourth, if the "reasonable endeavor" test continues to have relevance outside the consumer context, the Court finds it has been met here.  <u>Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc.</u>, 135 Cal. App. 4th 1023, 1029 (Cal. Ct. App. 2006) ("UCAN")[13].  Whether the reasonable endeavor test has been met is determined by looking at the entire agreement - its scope, purpose, and subject matter - and involves consideration of the result of a breach and the reasonableness of the sums agreed to be paid.  <u>Id.</u> at 1034.  In gauging whether a reasonable endeavor has been made, the focus is on the reasonableness of the amount of liquidated damages, not whether there is proof of a subjective negotiation of the amount.  <u>Id.</u> at 1034-36.  Applying this test here, the Court concludes that the record supports a finding that the parties made a reasonable endeavor to estimate a fair compensation for the expected loss.

Fifth, the fact that there was an admittedly coercive component to the structure of the settlement is not fatal.  A liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it

---

[13]/ In the consumer context, the current law is a continuation of the law replaced in 1978, indicating that the test remains applicable there. Outside the consumer context, this may not be so. <u>See</u> <u>UCAN</u> 135 Cal. App. 4th at 1029.

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 30 of 33

represents a reasonable attempt to anticipate the losses to be suffered. <u>Weber, Lipshie, & Co. v. Christian</u>, 52 Cal. App. 4th at 656.

On this record, there is a sufficient showing that the parties were fully informed of the facts by virtue of their extensive pre-mediation discovery and understood the magnitude of what was being given up and what was being gained by settling The parties' competing goals are reflected in the Settlement Agreement. The Trustee agreed to accept a potential $1.1 million and the Defendants agreed to pay a potential $1.1 million. In exchange, the Trustee gave up his chance to recover a potential $5 million and the Family Defendants gave up the chance to avoid liability in full and receive payment on any allowed claims. There is a sufficient showing of a legal intent to establish a just compensation for an anticipated loss to be sustained from a breach of the Settlement Agreement.

In addition, the Trustee has stated that the anticipated dividend to be paid on allowed unsecured claims is 60 percent. [Docket no. 385, Declaration of Trustee, ¶ 8.] Claim no. 42 was in the original amount of approximately $500,000. If allowed in full, it had a potential recovery of roughly $300,000. Claim no. 42 was resolved by Family Defendants paying the claimant less than this ($86,800), but this is in part confirmatory of the reasonableness of the endeavor to estimate damages that the Trustee might have been exposed to as a result of the Family Defendants' breach.

**IV.  <u>CONCLUSION</u>**

For the reasons stated above, the provisions in the

Case: 06-05095   Doc# 129   Filed: 09/09/08   Entered: 09/09/08 11:03:35   Page 31 of 33

Settlement Agreement setting the amount of the Judgment were not
unreasonable under the circumstances existing at the time the
settlement was reached.  By definition, the Judgment based on
these provisions is not an invalid penalty.  The amount of the
Judgment reflects a reasonable attempt by the parties to
anticipate the losses to be suffered upon breach of the
Settlement Agreement.  As such, it is not appropriate to amend or
vacate the Judgment.

The Family Defendants' motion for reconsideration and motion
to vacate the judgment are denied.  A separate order will issue.


* * * * * *  END OF MEMORANDUM DECISION  * * * * * *

*Memo.Dec.VEC.06-5095-RLE*                    -32-

1    **<u>Court Service List</u>**:

2    [by Mail and/or ECF]

3    <u>Counsel for Family Defendants</u>:
     Gayle Green
4    Wendy Smith
     Binder & Malter
5    2775 Park Ave.
     Santa Clara, CA 95050
6
     <u>Counsel for Trustee</u>:
7    Merle Meyers
     Meyers Law Group
8    44 Montgomery St., Suite 1010
     S.F., CA 94104
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Memo.Dec.VEC.06-5095-RLE*                    -33-